IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT E. WEBBER )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ACADEMY FOR EDUCATIONAL )<br>DEVELOPMENT )<br>)<br>Defendant. ) | Civil Action No. 1:11-cv-00920-HHK<br><br>Judge Henry H. Kennedy |

## DEFENDANT ACADEMY FOR EDUCATIONAL DEVELOPMENT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), Defendant Academy for Educational Development ("AED"), by its attorneys, hereby moves to dismiss Plaintiff Robert E. Webber's ("Webber") complaint for damages under the whistleblower provisions of the False Claims Act, 31 U.S.C. § 3730(h). As explained more fully in the accompanying memorandum, this motion to dismiss is made upon the grounds that Webber: (1) has failed to allege that he was engaged in protected activity; (2) has failed to allege that AED knew he was engaged in protected activity; and (3) has failed to allege that AED retaliated against him because of any protected activity.

Wherefore, Defendant AED respectfully requests that this Court dismiss Webber's complaint with prejudice. Defendant AED also respectfully requests oral argument.

A proposed Order is attached.

Dated: July 18, 2011

Respectfully submitted,

**CROWELL & MORING LLP**

*/s/ Glenn D. Grant*
Glenn D. Grant (D.C. Bar 437324)
Email: ggrant@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2852

Mark R. Troy
Email: mtroy@crowell.com
Mana E. Lombardo
Email: mlombardo@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750

Counsel for Defendant
Academy for Educational Development

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT E. WEBBER | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:11-cv-00920-HHK |
| | ) |
| ACADEMY FOR EDUCATIONAL DEVELOPMENT | ) Judge Henry H. Kennedy |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>ACADEMY FOR EDUCATIONAL DEVELOPMENT'S MOTION TO DISMISS</u>**

Glenn D. Grant (D.C. Bar 437324)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Mark R. Troy
Mana E. Lombardo
CROWELL & MORING LLP
515 South Flowers Street, 40th Floor
Los Angeles, CA 90071

Counsel for Defendant
Academy for Educational Development

**TABLE OF CONTENTS**

|      |                                                                                                      | Page |
|------|------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION.......................................................................................... | 1    |
| II.  | ARGUMENT................................................................................................. | 2    |
|      | A. Elements Of A Whistleblower Retaliation Claim Under The False Claims Act............. | 2    |
|      | B. Webber Fails To Allege That He Engaged In Protected Conduct ................... | 3    |
|      | C. Webber Fails To Allege That AED Knew That He Was Engaged In Protected Activity........ | 7    |
|      | D. Webber Fails To Allege That AED Retaliated Against Him For Engaging In Protected Whistleblower Activity.............. | 10   |
| III. | CONCLUSION ............................................................................................ | 11   |

## TABLE OF AUTORITIES

Page

**Federal Cases**

*Boone v. MountainMade Found.*,
684 F. Supp. 2d 1 (D.D.C. 2010) ............................................................................ 3, 7

*Hoyte v. Am. Nat'l Red Cross*,
518 F.3d 61 (D.C. Cir. 2008) ............................................................... 3, 4, 7, 11, 12

*Luckey v. Baxter Healthcare Corp.*,
183 F.3d 730 (7th Cir. 1999) ....................................................................................... 9

*Martin v. Arc of D.C.*,
541 F. Supp. 2d 77 (D.D.C. 2008) ...................................................................... 4, 5, 7

*Owens v. District of Columbia*,
631 F. Supp. 2d 48 (D.D.C. 2009) ............................................................................... 4

*Robertson v. Bell Helicopter, Inc.*,
32 F.3d 948 (5th Cir. 1994) ....................................................................................... 9

*Shekoyan v. Sibley Int'l*,
409 F.3d 414 (D.C. Cir. 2005) ................................................................................ 4, 7

*United States ex rel Yesudian v. Howard Univ.*,
153 F.3d 731 (D.C. Cir. 1998) ........................................................................ 4, 5, 7, 8

*United States ex rel. Schweizer v. Oce N. Am., Inc.*,
2011 U.S. Dist. LEXIS 31204 (D.D.C. Mar. 25, 2011) ................................. 3, 8, 10, 11

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
389 F.3d 1251 (D.C. Cir. 2004) ............................................................................ 8, 10

*X Corp v. John Doe*,
816 F. Supp. 1086 (E.D. Va. 1993) ............................................................................ 9

*Zahodnick v. IBM Corp.*,
135 F.3d 911 (4th Cir. 1997) ...................................................................................... 4

**Federal Statutes**

*31 U.S.C. § 3729(a) ........................................................................................................ 4
31 U.S.C. § 3729(a)(1) .................................................................................................... 7
31 U.S.C. § 3729(a)(2) ................................................................................................. 6, 7
*31 U.S.C. § 3730(h) ............................................................................................... 1, 2, 8
31 U.S.C. § 3730(h)(1) .................................................................................................... 2
31 U.S.C. § 3730(h)(2) .................................................................................................... 2
Fraud Enforcement and Recovery Act of 2009 ........................................................... 2, 4

**Rules**

*Rule 12(b)(6) .................................................................................................... 2, 10, 11

I.  **INTRODUCTION**

Plaintiff Robert E. Webber ("Webber") brings suit against his former employer, defendant Academy for Educational Development ("AED"), for whistleblower retaliation under the Federal False Claims Act, 31 U.S.C. § 3730(h) ("the FCA"). Webber alleges that AED terminated him because he investigated and reported improper lending practices in connection with a United States Agency for International Development ("USAID") rural finance program in Afghanistan ("the Program"). Complaint ¶¶ 2, 5. Webber fails to state a claim because nowhere does he allege that *AED* engaged in improper lending practices, or other wrongdoing or violations of the FCA. Rather, Webber's allegations assert only that he investigated and complained of improper lending activities by five different third party entities which had entered into agreements with AED to use USAID funds to make loans to Afghani individuals and entities.[1] Complaint ¶ 6. Indeed, his allegations focus almost exclusively on the actions of one particular partner organization, the Agriculture Cooperative Development International/Volunteers in Overseas Cooperative ("ACDI/VOCA"), and the Afghanistan Rural Finance Company, a not-for-profit enterprise owned entirely be ACDI/VOCA. Complaint ¶¶ 6, 10.

Webber's complaint on its face does not meet the required elements of an FCA retaliation claim; rather, Webber pleads numerous facts which undermine and preclude a § 3730(h) whistleblower claim. Because Webber's Complaint focuses entirely on his investigation of wrongdoing by the partner entities, and fails to make any allegations that *AED* violated the FCA or that he was investigating AED for such violations, he is unable to assert a necessary predicate to a FCA retaliation claim – that he was engaged in protected activity which could reasonably have lead to a viable FCA claim against AED. Furthermore, Webber repeatedly concedes that

---

[1]   Webber alleges that the five organizations were often referred to as AED "partners" (Complaint ¶6) and references them as "the partner entities" or "partner organizations" throughout the Complaint. These companies were in fact third parties and not related entities of AED. Webber's terminology is used herein to maintain consistency with the Complaint. Such usage by defendant is for ease of reference only.

1

his investigation of and reports concerning the lending activities of those other entities were part of the normal scope of his primary and required job responsibilities. Because Webber alleges that he was doing his job, he could not possibly have stood out as a whistleblower. In other words, by admitting that he was merely performing his normal job function, he could not have put AED on notice that he was taking any extraordinary measures consistent with whistleblowing. Consequently, he fails to meet a second prerequisite to stating a § 3730 retaliation claim – that he put AED on notice and AED *knew* that he was engaged in protected whistleblower activity. Finally, because he fails to properly allege that he was engaged in protected whistleblower activity, and fails to allege that he put AED on notice of any protected activity, he fails to demonstrate that he was discriminated against "because of" that activity.[2] Hence, this Court should dismiss with prejudice Plaintiff Webber's complaint for whistleblower retaliation for failure to state a claim under Rule 12(b)(6).

## II.     ARGUMENT

### A.     Elements Of A Whistleblower Retaliation Claim Under The False Claims Act

The FCA prohibits employers from retaliating against employees "because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h)(1) (2006).[3] Such retaliation includes being "discharged, demoted, suspended, harassed, or in any other manner discriminated against in the terms and conditions of

---

[2]     Because this is a motion to dismiss, Defendant AED cannot offer evidence of why Webber was terminated. Instead, it is limited to the allegations contained in the four corners of the Complaint, and to arguing that Webber's complaint does not contain sufficient facts in support of his contention that AED discriminated against him due to protected activity.

[3]     On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") was signed into law, and amended certain provisions of the FCA. Section 3730(h) was amended primarily to increase protection for *qui tam* plaintiffs/relators beyond employees, to include contractors and agents. Because the conduct giving rise to Webber's Complaint took place prior to and during January 2009 when he received notice of termination, the version of the FCA in effect before enactment of FERA applies. Thus, the above-quoted provisions from section 3730(h) contain the pre-amendment language.

employment." *Id.* An employee may bring an action to enforce this subsection. *Id.* § 3730(h)(2).

As the D.C. Circuit has explained: To prevail on a whistleblower claim, an employee must demonstrate that:

> (1) he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and
>
> (2) he was discriminated against "because of" that activity.

To establish the second element, the employee must in turn make two further showings. The employee must show that: (a) "the employer had knowledge the employee was engaged in protected activity;" and (b) "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity." *United States ex rel. Schweizer v. Oce N. Am., Inc.*, 2011 U.S. Dist. LEXIS 31204, 10-11 (D.D.C. Mar. 25, 2011) *(citing Hoyte ex rel. United States v. Am. Nat'l Red Cross*, 518 F.3d 61, 66 (D.C. Cir. 2008)).

As discussed below, Webber has not met any of these elements, but rather, has alleged facts which preclude him from meeting the necessary requirements set forth by the federal False Claims Act and this Circuit.

### B. Webber Fails To Allege That He Engaged In Protected Conduct

Webber has not alleged that he engaged in protected conduct; he does not allege, assert or even suggest that his *employer* had been committing fraud or even that he had been investigating his employer.

For the first requirement – engaging in protected activity – the relator must "be investigating matters that reasonably could lead to a viable FCA case." *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 68 (D.C. Cir. 2008) (quoting *United States ex rel Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) (internal citations omitted)). D.C. courts have strictly interpreted and enforced the requirement that plaintiff show that his investigation reasonably could have led to a viable FCA case. For instance, in *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 6-10 (D.D.C. 2010), the court applied the heightened particularity requirement for

3

pleading fraud and false claims actions to plaintiffs' duty to allege the facts giving rise to their FCA retaliation claim. Even though the plaintiffs brought no *qui tam* action, the court dismissed the FCA retaliation claim "because the plaintiffs have failed to plead with particularity facts that would demonstrate that their investigation reasonably could have led to a viable FCA claim, and specifically failed to allege that [the defendant's President and Executive Director] acted with the requisite intent...." *Id.* at 10.[4] *See also Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54-55 (D.D.C. 2009) (dismissing the plaintiff's retaliation claim because her complaint failed to allege that she attempted to stop a false claim against the government).

Furthermore, an employee does not engage in protected conduct if he "merely informs a supervisor of the problem." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422-423 (D.C. Cir. 2005) (*citing Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)). Likewise, an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations does not state a claim under the FCA. *Yesudian*, 153 F.3d at 740 (citations omitted). *See also Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 68, (D.C. Cir. 2008) (affirming the dismissal of a FCA retaliation claim when plaintiff's "investigation was into mere regulatory noncompliance and did not concern false or fraudulent claims as it must to support a retaliation claim under" the FCA) (internal citations omitted). *Martin v. Arc of D.C.*, 541 F. Supp. 2d 77, 83-84 (D.D.C. 2008) (holding that an employer's failure to comply with its government funding requirements did not give rise to a viable claim under FCA and that, as a result, the plaintiff's investigation of such non-compliance was not protected activity in furtherance of a viable FCA claim).

---

[4] The False Claims Act imposes liability on any person, who, *inter alia*: (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a). As discussed above in footnote 3, the version of the FCA in effect before enactment of FERA applies and the pre-amendment language of the statute is cited throughout this motion.

In *Martin v. Arc of D.C.*, 541 F. Supp. 2d 77, 83-84 (D.D.C. 2008), the court found that the plaintiff did not allege facts in her complaint to support an inference that she was investigating a viable FCA claim. Plaintiff alleged that the employer fired plaintiff "based on [the employer's] fear that [plaintiff-employee] would report to the federal and/or D.C. government that [employer] is not utilizing government funds in the manner prescribed or anticipated in its contracts with the government." *Id.* The court found that plaintiff did not allege that she had in fact investigated her employer's submission of a false claim for payment or approval to the government, but rather had been concerned with her employer's failure to comply with funding requirements. Accordingly, the court held that plaintiffs allegation did not constitute a viable action under the FCA, and therefore plaintiff did not engage in any protected activity in furtherance of a viable FCA claim. *Id.* (*citing Yesudian*, 153 F.3d at 740). Thus, plaintiff's retaliation claim under the FCA was dismissed.

Like in *Martin*, Webber's allegations reflect his concerns about how contract funds were being spent by the *other entities*, but not AED. Likewise, his allegations do not state that he was investigating, much less concerned with, any submission of a false claim for payment or approval to the government, let alone a submission by his employer, AED. *See* Complaint ¶¶ 20, 30, 35, 37, 50, and 51.

As a preliminary and threshold matter, Webber concedes that he was not investigating AED, and AED was not engaged in any alleged fraud. *See* Complaint, introductory paragraph, describing "his investigation of *partner entities* directly engaged in the fraud"; Count I, ¶50 ("Webber determined that conduct *by the five partner organizations,* especially ACDI/VOCA, constituted fraud, misconduct, and violations of USAID rules and accepted standards of practice."); and Count I, ¶51 ("Webber informed AED that conduct *by the five partner organizations* constituted fraud, misconduct, and violations of USAID rules and accepted standards of practice....") (emphases added). Throughout his Complaint, Webber makes vague and undirected assertions, and uses passive voice to cloud the fact that AED was not the target of his investigation or fraud allegations. *See* Complaint ¶8 (Webber assessed "whether proper

5

lending procedures *had been followed*") (emphasis added); ¶8 ("governance was an issue"); ¶13 ("Webber determined that the loan [by ARFC, *not AED*] reflected poor underwriting and poor documentation").

Though Webber states generally that "he complained to AED officials about serious misconduct, including fraud," further review of the Complaint reveals that his complaints were not about AED. Nearly all of his primary allegations are directed at possible wrongdoing by other entities, such as ARFC (the not-for-profit company owned by ACDI/VOCA) – not AED. *See* Complaint ¶13 ("Webber was concerned that the loan [by ARFC] to the pomegranate facility may have involved fraud"); and ¶¶26-29 (improper loan of $300,000 by AFRC). Even what appears to be Webber's most specific and serious allegation of wrongdoing, concerning an ARFC loan whose proceeds had gone illegally to Iran, is not directed at AED. Complaint ¶19. Paragraph 20 attempts to allege wrongful conduct by AED, but the "false representations" in that paragraph concerning the status of certain loans are, again, those made by ARFC, not AED. Nor does Webber allege that AED *knew* ARFC's representations were false. Complaint ¶20; 31 U.S.C. § 3729(a)(2). In paragraph 35, Webber alleges that *ACDI/VOCA* failed to report accurately about the status of loans, and that he believed (but apparently did not assert) that *ACDI/VOCA's* "reporting that the loan portfolios were not delinquent amounted to a materially false statement..." Nowhere does Webber allege that *AED* made any of these allegedly false statements. 31 U.S.C. § 3729(a)(2). Similarly, paragraph 37 suggests that the *ARFC's* conduct "allow[ed] AED to paint a false picture of the success of the program and obtain additional funding from USAID." That statement, like the others, falls short of accusing AED of wrongdoing or violating the FCA.

Instead, Webber's assertion against AED is that AED should have used a different approach of monitoring what *others* were doing. *See* Complaint ¶¶11-12. Webber's allegations concern his disagreement with how AED dealt with "inadequate supervision of the lending activities of the five partner organizations" (not by AED) (Complaint ¶15), and AED's "fail[ure] to support Webber and his interest in closely monitoring the way the partner organizations were

6

making loans to Afghan entities." Complaint ¶18. Webber further complains that AED insisted that Webber take a "collaborative" approach to his monitoring of the partner organizations' lending practices. Complaint ¶¶ 23, 24, and 33. However, none of these allegations come anywhere close to accusing AED of "false or fraudulent claims as it must to support a retaliation claim under" the FCA. *Hoyte*, 518 F. at, 68.

Hence, Webber fails to allege that he engaged in protected activity, only that he merely informed AED of a problem. *Shekoyan*, 409 F.3d at 422-423. Likewise, his concerns that parties were not utilizing government funds in the manner prescribed or anticipated in contracts with the government – none of whom were Webber's employer – does not state a claim under the FCA. *Martin*, 541 F. Supp. 2d at 83-84; *see also Yesudian*, 153 F.3d at 740 (citations omitted).

At no point does Webber allege that *anyone* submitted any false claims for payment to the government, let alone AED.[5] *See* Complaint ¶¶ 20, 30, 35, 37, 50, and 51. In sum, Webber has failed to plead that AED made any false statements or submitted any false claims to the government, has failed to plead that AED *knowingly* submitted false claims or statements to the government, and has failed to plead that AED acted with the scienter required by the FCA. 31 U.S.C. § 3729(a)(1) and (a)(2). Hence, Webber has failed to plead *any* of the requisite elements that would demonstrate that his investigation could reasonably have led to a viable FCA claim, let alone plead them with the level of specificity required under the FCA. *Boone*, 684 F. Supp. 2d at 10.

### C. Webber Fails To Allege That AED Knew That He Was Engaged In Protected Activity

Webber has not alleged that AED knew that he was engaged in protected conduct because he alleges that he reported to AED only his concerns of wrongdoing regarding *other entities*, not AED. Moreover, Webber has not alleged that he put AED on notice that he was

---

[5] Indeed, Webber even references a pending ongoing investigation of AED by the USAID Office of Inspector General – but he does not allege that he did anything to trigger that investigation or had any involvement in it. Complaint ¶3.

engaged in any whistleblower activity through his reports because he asserts that such reporting was part of his normal job duties.

"Unless the employer is aware that the employee is investigating fraud, ... the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *United States ex rel Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998) (internal quotation marks and alterations omitted).

With regard to the second element of a claim under § 3730(h)—that the employer has knowledge that the employee was engaged in protected activity—the D.C. Circuit has further explained that "[p]laintiffs alleging that performance of their normal job responsibilities constitutes protected activity must overcome the presumption that they are merely acting in accordance with their employment obligations to put their employers on notice" that they are engaged in protected activity. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004) (citations omitted). In other words, to prevail here, Webber must establish that his reporting of alleged FCA violations was beyond the scope of his employment responsibilities and was sufficient to put AED on notice that Webber was engaged in activity protected by statute. *United States ex rel. Schweizer v. Oce N. Am., Inc.*, 2011 U.S. Dist. LEXIS 31204, 9-11 (D.D.C. Mar. 25, 2011).

Here, there are no facts asserted in the Complaint to show that Webber's activities put AED on notice that he would bring charges against them or become a whistleblower. The reasons for this are twofold.

First, the allegations regarding Webber's complaints to AED revolve entirely around the activities of other entities, not AED. He alleges that he was "so concerned with *ARFC*" and "deeply concerned that a fraud may have already occurred" (Complaint ¶15), but he does not allege that he voiced that concern or, more importantly, that the concern was directed at fraud by his employer. In one of his initial "complaints" to AED, he stated merely that was "concerned" about the governance process. (Complaint ¶25.) *See also* Complaint ¶¶26-27 ("Webber after investigating concluded that the payment [by ARFC, *not AED*] was fraudulent...Webber

8

reported to AED's senior management...his conclusion that the payment of this fee [*by ARFC*] was unlawful, and he expressed his conclusion that ACDI/VOCA had been unwilling to supervise ARFC."); ¶29 ("Webber remained concerned about the *ARFC* $4.3 million loan..."); and ¶30 ("Webber expressed his view often that U.S. taxpayer funds had been put at risk *by ARFC's* imprudent lending activities...") (emphases added).

Given that none of these accusations was directed at his employer, this is a far cry from whistleblowing or accusing AED of committing a violation of the FCA. *See Robertson v. Bell Helicopter, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) and *X Corp v. John Doe*, 816 F. Supp. 1086, 1095 (E.D. Va. 1993) (internal reporting of concerns about charges to the government by a contractor employee is not "protected activity" under False Claims Act where the employee never used the terms "illegal," "unlawful," or "qui tam action"); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) (finding plaintiff's proposals and complaints regarding testing procedures were not related to uncovering fraud; debates within a corporation about "optimal testing protocols cannot be equated to knowledge of litigation....An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation....Saber-rattling is not protected conduct. Only investigation, testimony, and litigation are protected...").

Second, Weber fails to allege that his reports to AED put AED on notice that he would bring charges against them or become a whistleblower because it was Webber's job to review the Program and make recommendations regarding appropriate distribution of funds. *See* Complaint ¶2, ("Webber was Chief of Party for AED in connection with the [ARIES] Program of [USAID] in Kabul, Afghanistan...The Chief of Party was...the person charged with the responsibility for assuring that USAID funds were properly spent"); Complaint, introductory paragraph, ("Webber continued to insist on doing his job"); and Complaint ¶14, (Webber visited the partner organization and the entities that had received the USAID funds "[a]s part of his supervisory activities").

Even in alleging that he reported to the government his concerns that ARFC (not AED), had made loans that were unlawfully used to assist companies in Iran, Webber admitted that this was a required part of performing his normal job responsibilities. Complaint ¶21, ("Webber was required as Chief of Party to inform USAID and AED about the unlawful use of loan funds"). Indeed, Webber's multiple admissions in his Complaint directly support that he was "acting in accordance with [his] employment obligation." *Compare with Williams,* 389 F.3d at 1261 (declining to dismiss FCA retaliation claim despite defendant's contention that employee's disclosure to government was in fact part of his job responsibilities, because defendant had only made such contention at oral argument and such information was not contained in plaintiff's complaint: "at this stage of the proceedings – a Rule 12(b)(6) motion to dismiss – our job responsibilities require that we limit our consideration to the allegations in the complaint").

In sum, Webber has actually alleged facts establishing that his reporting was a central part of his job responsibilities. Therefore, his allegations fail to overcome the presumption that he was merely acting in accordance with his employment obligations, and fail to establish that his reporting of alleged FCA violations was beyond the scope of his employment responsibilities. Consequently, Webber has not asserted that he properly put AED on notice that he was engaged in protected activity. *Williams,* 389 F.3d at 1261 (citations omitted); *Schweizer,* 2011 U.S. Dist. LEXIS 31204 at 9-11.

### D. Webber Fails To Allege That AED Retaliated Against Him For Engaging In Protected Whistleblower Activity

In addition to the above requirements, the employee must show that his actions were the basis for the employer's retaliatory actions; *i.e.* "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity." *Schweizer,* 2011 U.S. Dist. LEXIS 31204 at 11 (*citing Hoyte,* 518 F.3d at 66).

Here, Webber has failed to state that allegation clearly, and he has failed to allege facts supporting that AED retaliated against him, or that any "retaliation" was motivated by his engaging in protected activity. AED's criticisms of Webber, described in Complaint paragraphs

10

22-24, do not appear to be in retaliation for any activity, but rather, appear on their face to be legitimate differences in how to manage the Program (*e.g.*, AED's request for a "collaborative" approach). Webber's allegation that AED senior management restricted his authority to supervise one of AED's partner entities as a result of Webber's complaints is based entirely on reports he made about the actions of *other entities,* not AED. Complaint ¶39. Thus, any alleged change in his job duties was not based on protected activity. Webber further alleges that he received a letter of commendation and a salary increase *after* voicing his complaints to AED. Complaint ¶40. This allegation reflects that his prior complaints did not adversely impact his job standing. Finally, in Count I, Complaint paragraphs 53-54, Webber attempts to allege generally AED's motivation for terminating his employment; however, as described herein, the body of the Complaint does not directly or adequately make that allegation. Hence, Webber fails to allege that AED retaliated against him for engaging in protected whistleblower activity. *Schweizer*, 2011 U.S. Dist. LEXIS 31204 at 11 (*citing Hoyte*, 518 F.3d at 66).

### III. CONCLUSION

For the foregoing reasons, Defendant AED respectfully requests that the Court grant its motion to dismiss with prejudice Plaintiff Webber's complaint for whistleblower retaliation for failure to state a claim under Rule 12(b)(6).

Dated: July 18, 2011                               Respectfully submitted,

                                                   **CROWELL & MORING LLP**

                                                   */s/ Glenn D. Grant*
                                                   Glenn D. Grant (D.C. Bar 437324)
                                                   Email: ggrant@crowell.com
                                                   1001 Pennsylvania Avenue, N.W.
                                                   Washington, DC 20004-2595
                                                   (202) 624-2852

12

Mark R. Troy
Email: mtroy@crowell.com
Mana E. Lombardo
Email: mlombardo@crowell.com
515 South Flowers Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750

Counsel for Defendant
Academy for Educational Development

## CERTIFICATION OF SERVICE

I hereby certify that I am an attorney for Defendant Academy for Educational Development, and that on July 18, 2011, I caused a copy of the foregoing Defendant Academy for Educational Development's Motion to Dismiss, Memorandum In Support thereof, and proposed Order to be filed with this Court and served on Plaintiff's counsel below electronically via the Court's ECF system:

>Michael A. Schlanger
>COVINGTON & BURLING LLP
>1201 Pennsylvania Avenue, NW
>Washington, DC  20004
>
>Robert P. Haney, Jr.
>COVINGTON & BURLING LLP
>The New York Times Building
>620 Eighth Avenue
>New York, NY  10018-1405
>
>Geoffrey J. Vitt
>Elizabeth K. Rattigan
>VITT & RATTIGAN, PLC
>8 Beaver Meadow Road
>P.O. Box 1229
>Norwich, VT  05055

/s/ *Glenn D. Grant*