**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT E. WEBBER | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:11-cv-00920-HHK |
| | ) | |
| ACADEMY FOR EDUCATIONAL | ) | Judge Henry H. Kennedy |
| DEVELOPMENT | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT**
**ACADEMY FOR EDUCATIONAL DEVELOPMENT'S MOTION TO DISMISS**

Glenn D. Grant (D.C. Bar 437324)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595

Mark R. Troy (CA Bar 120418)
Mana E. Lombardo (CA Bar 228846)
CROWELL & MORING LLP
515 South Flowers Street, 40th Floor
Los Angeles, CA  90071

Counsel for Defendant
Academy for Educational Development

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 2

    A.    Webber Fails to Allege the Elements Of A Whistleblower Retaliation
        Claim Under Any Pleading Standard ..................................................... 2

    B.    Webber Fails To Allege That He Engaged In Protected Conduct
        Because His Monitoring and Reporting of Other Entities' Alleged
        Misconduct Could Not Reasonably Lead to a Viable FCA Claim
        Against AED ........................................................................................ 4

        i.     Webber Does Not Allege That He Investigated Fraud, False
            Statements, or False Claims by AED ........................................5

        ii.    The FCA Creates Liability for Frauds Perpetuated *Upon*
            *Grantees*, But Webber's Reporting of False Representations by
            Others Could Not Reasonably Lead to a Viable FCA Claim
            Against AED as A Grantee.........................................................6

        iii.   Webber's Argument that "Investigation of Failure to Disclose
            Is Protected Activity" is Unclear and Unsupported by the
            Complaint ...................................................................................8

    C.    Webber Fails To Allege That AED Knew That He Was Engaged In
        Protected Activity................................................................................. 9

        i.     Webber Fails To Allege That He Put AED On Notice That He
            Was Engaged In Protected Activity Because He Alleges Only
            Investigation of Other Entities, Not AED ................................9

        ii.    Webber Fails To Allege That He Acted Outside The Scope Of
            His Job Duties In Any Manner That Should Have Put AED On
            Notice That He Was Acting In Furtherance Of An FCA Suit.............10

    D.    Webber Fails to Allege That AED Retaliated Against Him For
        Engaging In Protected Whistleblower Activity................................. 13

III.   CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atherton v. Dist of Columbia Office of the Mayor,*
    567 F.3d 672 (D.C. Cir. 2009) .........................................................................4

*Boone v. MountainMade Found.,*
    684 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................2, 3, 6

*Hoyte ex rel. United States v. Am. Nat'l Red Cross,*
    518 F.3d 61 (D.C. Cir. 2008) ...............................................................1, 5, 13

*Martin v. Arc of D.C.,*
    541 F. Supp. 2d 77 (D.D.C. 2008) ...................................................................6

*Shekoyan v. Sibley Int'l,*
    409 F.3d 414 (D.C. Cir. 2005) .......................................................................3

*Shekoyan v. Sibley Int'l Corp.,*
    217 F. Supp. 2d 59 (D.D.C. 2002) ...................................................................3

*United States ex rel. Schweizer v. Oce N. Am., Inc.,*
    2011 U.S. Dist. LEXIS 31204 (D.D.C. Mar. 25, 2011)...........................1, 10, 11, 13

*United States ex rel. Williams v. Martin-Baker Aircraft Co.,*
    389 F.3d 1251 (D.C. Cir. 2004) ..............................................................3, 9, 11, 12

*United States ex rel Yesudian v. Howard Univ.,*
    153 F.3d 731 (D.C. Cir. 1998) .................................................................. passim

STATUTES

31 U.S.C. § 3729(a) ............................................................................................4

31 U.S.C. § 3729(a)(1) and (2) .............................................................................8

31 U.S.C. § 3729(c)(2006)...................................................................................7

Federal False Claims Act, 31 U.S.C. § 3730(h) ("the FCA")................................. passim

OTHER AUTHORITIES

FRCP Rule 12(b)(6) ............................................................................................2

Rule 9(b) ...........................................................................................................2, 3

DCACTIVE-15927891.2

I.        **INTRODUCTION**

To establish a claim against defendant the Academy for Educational Development ("AED"), for whistleblower retaliation under the Federal civil False Claims Act, 31 U.S.C. § 3730(h) ("the FCA"), Plaintiff Webber ("Webber") must plead that: (1) he engaged in protected activity, that is, engaged in acts done in furtherance of an FCA action against AED; (2) AED knew that he was engaged in such protected activity; and (3) AED retaliated against him, at least in part, because of that protected conduct.  *United States ex rel. Schweizer v. Oce N. Am., Inc.*, 2011 U.S. Dist. LEXIS 31204, 10-11 (D.D.C. Mar. 25, 2011) *(citing Hoyte ex rel. United States v. Am. Nat'l Red Cross*, 518 F.3d 61, 66 (D.C. Cir. 2008)).  Webber's Complaint on its face fails to meet any of these three required elements under any applicable pleading standard.

Webber's Complaint focuses entirely on his alleged knowledge of, which he characterizes as an "investigation" of wrongdoing by five different third party entities (the so-called "partner entities") which had entered into agreements with AED to obtain and use United States Agency for International Development ("USAID") funds to make micro-loans to Afghani individuals and entities.  Complaint ¶ 6.  His allegations do not concern any representations made by AED, but rather those of the so-called "partner entities."  Because Webber fails to make any allegations that he was aware that *AED* submitted false claims or made false statements to violate the FCA, or that he was investigating *AED* for such violations, he is unable to assert the first element of a FCA retaliation claim – that he was engaged in protected activity which could reasonably have lead to a viable FCA claim against AED.  Webber's argument that claims presented by others to grantees may be actionable as False Claims Act claims is inapplicable to his case – such action could lie only if it were brought against those entities alleged to have presented the false claims (i.e., the so-called partner entities), not against AED simply by virtue of its status as a grantee.

Webber fails to allege that AED knew he was engaged in protected activity because his allegations that he reported and/or "investigated" the fraud and false representations *of others* could not lead AED to know that it – his employer – was being investigated by Webber.

Moreover, by his own admissions, Webber's "investigatory" activities concerning the five partner entities and proper spending of USAID funds were central parts of his job duties as "Chief of Party" for AED. Complaint, ¶ 2. By admitting that he was doing his job, he could not have put AED on notice that he was "blowing the whistle." Webber's Opposition fails to address this critical point because Webber is unable to refute that such admissions preclude his ability to allege that AED knew that he was supposedly engaged in protected whistleblower conduct. Consequently, Webber fails to meet the second prerequisite to properly pleading a § 3730 retaliation claim. At this point, Webber cannot go back in time to retract these admissions in his Complaint, and should not be granted leave to amend to do so.

In addition, with respect to the third required statutory prong, because Webber fails to allege that he engaged in protected whistleblower activity and fails to allege that AED knew of any such protected activity, he cannot claim that he was retaliated against "because of" that activity.

Accordingly, this Court should dismiss with prejudice Plaintiff Webber's complaint for whistleblower retaliation for failure to state a claim under Rule 12(b)(6).

## II.      ARGUMENT

### A.      Webber Fails to Allege the Elements Of A Whistleblower Retaliation Claim Under Any Pleading Standard

Webber has failed to allege the basic elements of a whistleblower retaliation claim under section 3730(h) of the False Claims Act. For this reason, Webber's claim should be dismissed pursuant to FRCP Rule 12(b)(6), even under the general pleading standard set forth in Rule 8(a)(2).

Webber places much emphasis on his contention that Rule 9(b) does not apply to a whistleblower retaliation claim and construes his argument as though AED's Motion to Dismiss is entirely premised on Webber's failure to meet 9(b) pleading standards. Both Webber's contentions and his characterizations of AED's arguments are inaccurate.

Webber inaccurately characterizes and summarily dismisses *Boone v. MountainMade Found.,* 684 F. Supp. 2d 1, 6-10 (D.D.C. 2010), by contending that *Boone* "merely says that the plaintiffs there failed to dispute that Rule 9(b) applies to retaliation claims." Opp. at 6. This misstates the case. In *Boone*, the court specifically dismissed the whistleblower retaliation claim "because the plaintiffs have failed to plead with particularity facts that would demonstrate that their investigation reasonably could have led to a viable FCA claim, and specifically failed to allege that [the defendant's President and Executive Director] acted with the requisite intent…." The fact that plaintiffs did not dispute that Rule 9(b)'s heightened pleading requirements apply to retaliation claims brought under the FCA is inapposite. *Id.* at 8, n.8. In addition, Webber again misstates the law by contending that "every case [*Boone*] does cite with respect to the applicability of Rule 9(b) to whistleblower retaliation claims asserted only False Claims Act claims." Opp. at 6. On the contrary, *Boone* cited *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002), another case within the DC Circuit that applied the heightened requirements of Rule 9(b) to an FCA *retaliation* claim. *Id. at* 73 (D.D.C. 2002) ("[t]he District of Columbia Circuit has stated that an allegation brought under the FCA must satisfy the requirements of Federal Rule of Civil Procedure 9(b)"). *Shekoyan* clearly asserted that while "notice pleading generally applies to all civil actions, because the plaintiff's FCA [whistleblower retaliation] claim is an allegation of fraud, it must also comply with Federal Rule of Civil Procedure 9(b)." *Id.* at 63-64.[1] Furthermore, despite Webber's implied argument that *United States ex rel Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) stands for the proposition that Rule 9(b)'s heightened pleading requirements do not apply to § 3730(h) retaliation actions, *Yesudian* does not actually discuss the pleading standard. Opp. at p.6 and n.3.

---

[1] In 2005, the D.C. Circuit Court of Appeals recognized the lower court's application of Rule 9(b) to plaintiff's retaliation claim, stating: "the district court found that the complaint, which had been filed pro se, failed to satisfy FED. R. CIV. P. 9(b), which requires that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Shekoyan v. Sibley Int'l,* 409 F.3d 414, 418 (D.C. Cir. 2005) *(citing Shekoyan I*, 217 F. Supp. 2d at 73).

DCACTIVE-15927891.2

Hence, although the court in *United States ex rel. Williams v. Martin-Baker Aircraft Co*., 389 F.3d 1251, 1259 (D.C. Cir. 2004) applied the more general pleading standard set forth in Rule 8(a) to plaintiff's whistleblower retaliation claim, *Boone* and *Shekoyan* show that decisions within the DC Circuit are not uniform as to whether the heightened pleading requirements of 9(b) apply to such a claim.   Notwithstanding this, and regardless of whether Rule 9(b) applies, AED has moved to dismiss Webber's complaint because on its face (under any pleading standard) it does not meet the required elements of an FCA retaliation claim.   Mot. at pgs 1-2. By casting his fraud allegations against entities other than AED, and admitting that his monitoring and reporting activities were part of his job duties, Webber has affirmatively pled facts that undermine and preclude a § 3730(h) whistleblower claim.   Hence, Webber's pleadings do not even suggest a "'plausible' scenario to 'sho[w] that the pleader is entitled to relief.'" *Atherton v. Dist of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citations omitted).   Consequently, Webber's case should be dismissed, even under the more general standard of Rule 8(a)(2).

**B.      Webber Fails To Allege That He Engaged In Protected Conduct Because His Monitoring and Reporting of Other Entities' Alleged Misconduct Could Not Reasonably Lead to a Viable FCA Claim Against AED**

The first element of a whistleblower retaliation claims requires an employee to demonstrate that he engaged in protected activity.   *Yesudian,* 153 F.3d  at 736.   To meet this first element, a plaintiff must be "investigating matters that 'reasonably could lead' to a viable False Claims Act case."   *Id.* at 740.   "To be covered by the False Claims Act, the plaintiff's investigation must concern 'false or fraudulent' claims."   *Id*.

The FCA imposes liability on any person, who, *inter alia*: (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government…a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.   31 U.S.C. § 3729(a).   Webber's complaint does not allege facts that AED violated the FCA.

### i.   Webber Does Not Allege That He Investigated Fraud, False Statements, or False Claims by AED

Here, Webber alleges that he investigated fraudulent conduct by entities other than AED – the alleged "partner entities" – but does not allege that *AED* knowingly submitted or caused to be submitted any false claims or knowingly made false representations.  Indeed, though Webber accuses AED of cherry-picking by "…selectively attack[ing] the sufficiency of paragraphs of the Complaint…" (Opp. at pgs. 2 and 11), a review of those complaint paragraphs that Webber highlights (Opp. at pgs 9-10) reveals that the factual allegations underlying his conclusions consistently concern the improper actions of other entities, not AED.

In paragraph 19, Webber alleges that loan proceeds on a loan made by *ARFC*, not AED, had been improperly distributed.[2]  In paragraph 21, Webber alleges that he disclosed to USAID *ARFC's* improper use of proceeds.  Paragraph 24 sets forth an allegation concerning AED's response to Webber regarding Webber's reporting of violations of law by *ARFC*, not AED.  In paragraph 26, Webber alleges that he discovered that *ARFC*, not AED, had used USAID funds to make a "fraudulent" payment to a company with no apparent business purpose in the payment.  Paragraph 34 discusses a study which allegedly agreed with Webber's conclusions about "ARFC's activities and the risk to taxpayer funds."  Here again, the allegation does not concern fraud or fraudulent activity covered by the FCA on the part of AED.  Similarly, the allegations in paragraph 38 concern inaccurate reporting of the status of repayment loans by *ARFC*, not AED.  None of these allegations assert any false representations, false claims, or fraudulent conduct on the part of AED.  Therefore, Webber has not established that he was investigating matters that could reasonably lead to a viable FCA case against AED.  *See also Hoyte*, 518 F.3d at 66 (dismissing whistleblower retaliation claim because plaintiff had not alleged one of the elements of a reverse false claim).

---

[2] As Webber admits, ARFC is not even an alleged partner entity of AED's, but rather, "a wholly owned subsidiary of another partner entity, the Agricultural Cooperative Development International/Volunteers in Overseas Cooperative ('ACDI/VOCA')".

Even the two paragraphs Webber highlights that come closest to stating allegations against AED – paragraphs 20 and 37 – reveal that Webber's factual allegations of fraud by ARFC are the basis for unsupported and speculative conclusions (not facts) against AED. These conclusions are insufficient to state a claim against AED: "the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 6 (D.D.C. 2010). For instance, in paragraph 20, Webber alleges *upon information and belief* that *ARFC*, not AED, made false representations about its loan portfolio. Webber uses this to draw a general and unsubstantiated conclusion that AED feared that Webber would discover information "that would show the falsity of representations that it had made *or planned to make* to USAID." (Emphasis added.) Similarly, though paragraph 37 concludes that AED's failure to demand that interest on ARFC's loan not be capitalized and be paid directly "had no legitimate purpose other than to paint a false picture of the success of the program to USAID and obtain additional funding from USAID," this conclusion is based on ARFC's allegedly improper lending practices, not any wrongdoing or fraud on the part of AED. Even this allegation does not state that AED made any false representations, or submitted any false claims. As Webber acknowledges, "[i]n evaluating a complaint for compliance with Rule 8 and satisfaction of the usual standard for Rule 12(b)(6) motions, the complaint is to be read as whole…" Opp. at p.11. Taken as a whole, and by his own admissions, Webber was not investigating any "false or fraudulent" claims by AED, and therefore he was not investigating matters that "reasonably could lead" to a viable False Claims Act case against AED. *Yesudian,* 153 F.3d at 740; *See also Martin v. Arc of D.C.*, 541 F. Supp. 2d 77, 83-84 (D.D.C. 2008) (because plaintiff did not allege that she had in fact investigated her employer's submission of a false claim for payment or approval to the government, but rather had been concerned with her employer's failure to comply with funding requirements, plaintiffs allegations did not constitute a viable action under the FCA).

      **ii.**    **The FCA Creates Liability for Frauds Perpetuated *Upon Grantees*, But Webber's Reporting of False Representations by**

**Others Could Not Reasonably Lead to a Viable FCA Claim Against AED as A Grantee**

Webber's attempt to hold AED liable for the alleged misconduct of others is to no avail. Webber cites to *Yesudian* for the proposition that "protected activity includes investigation of false claims made *to a grantee* for the purpose of obtaining U.S. government funds" and that "'claims presented to grantees, but 'effectively' presented to the United States because the payment comes out of the funds the federal government gave the grantee' may be actionable as False Claims Act Claims." (Emphasis added.) Opp. at pgs. 11 and 12 (*citing Yesudian*, 153 F.3d at 742 and 738, respectively). What Webber conveniently fails to address, however, is *against whom* there may be an actionable FCA case. Webber does not claim that *Yesudian*, in fact, stands for the proposition that False Claims liability falls on the *maker* of the false statement, and not necessarily on the grantee who *receives the false claims*. Congress amended the FCA in 1986 to insert a new definition of "claim" that included "any request or demand…for money or property which is made *to* a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c)(2006) (emphasis added). The rationale behind this decision was to "clarify that the statute permits the Government to sue under the False Claims Act for frauds *perpetrated on* Federal grantees, including States and other recipients of federal funds." Opp. at p. 12, n.9; *Yesudian*, 153 F.3d at 737 (citations omitted). In other words, the language allowed the Government to directly pursue an FCA action against an entity with whom it has no privity, such as the "partners" Webber identifies in its complaint. This amendment to the FCA statute did not alter plaintiffs' pleading and proof standards for suing under the FCA retaliation provisions.

In citing *Yesudian*, Webber fails to acknowledge that an employee/employer relationship is different from a grantee/sub-grantee relationship. An employer can be held vicariously liable for the false representations of its employee when the employer uses those representations to submit its own false claims. In *Yesudian*, a former University employee sued his former supervisor in the University's purchasing department, for retaliating against him for reporting to

7

University officials that his superior had, among other things, falsified time and attendance records, defrauded the University by taking bribes from vendors, provided vendors with inside information to aid them in the bidding process, and permitted payments to vendors who did not provide services to the University. *Yesudian*, 153 F.3d at 744-745. Here, Mr. Yesudian's allegations of false representations and whistleblower retaliation were against his supervisor, not his employer. Based on these facts, the court determined that a reasonable juror could conclude that Mr. Yesudian was engaged in protected activity, i.e. an investigation that "reasonably could lead" to a viable FCA case against his supervisor. *Id*. at 739-740. Unlike in *Yesudian*, where the defendant in the retaliation suit was the individual being investigated for making false statements and perpetrating fraud upon the grantee, not the employer, here, Webber brings a whistleblower retaliation suit against AED based on his alleged "investigation" of fraudulent conduct and false statements allegedly made by other entities, particularly ARFC. *See* Complaint ¶¶ 13, 15, 19, 20, 21 26, 27, 30, 34, and 35. At bottom, Webber has not asserted that he was investigating false claims or false statements made by AED, therefore he cannot demonstrate that he was investigating matters that reasonably could lead to a viable FCA case against AED. *Yesudian*, 153 F3d at 739-740; 31 U.S.C. § 3729(a)(1) and (2).

### iii.  Webber's Argument that "Investigation of Failure to Disclose Is Protected Activity" is Unclear and Unsupported by the Complaint

Webber contends, for the first time in his Opposition, that "[i]nvestigation of failure to disclose false statements made to AED with respect to Government funds it disbursed *would be actionable* as a False Claims Act claim." Opp. at p. 13. This argument is vague and unclear; Webber's use of the phrase "would be actionable" reveals that this argument is based on some hypothetical set of facts, not those alleged in his Complaint. To the extent that argument implies that Webber was investigating AED's failure to disclose fraud or violations of law by others, such a contention is unsupported by the allegations of the Complaint. Indeed, Webber cites to no Complaint paragraphs in support of this newly-concocted argument. As discussed above,

8

Webber's allegations repeatedly and consistently focus on his alleged "investigation" of the misconduct of the so-called "partner entities," not AED.  Whether express or implied, Webber's allegations do not concern any false claims for payment submitted by AED, or any false representations or omissions of AED.  31 U.S.C. § 3729(a)(1) and (2).

## C.  Webber Fails To Allege That AED Knew That He Was Engaged In Protected Activity

The second required element of a § 3730 retaliation claim requires plaintiff to put defendant on notice that he is engaging in protected activity.  "What defendant must know is that plaintiff is engaged in protected activity as defined above—that is, in activity that reasonably could lead to a False Claims Act case." *Yesudian*, 153 F.3d at 742.

### i.  Webber Fails To Allege That He Put AED On Notice That He Was Engaged In Protected Activity Because He Alleges Only Investigation of Other Entities, Not AED

Webber contends that "the Complaint clearly alleges that AED had notice that Webber was engaged in protected activity – the investigation of false claims for money made to a recipient of U.S. Government funds."  Opp. at p. 14.  But, even in their best light, these allegations are about false claims made by others.  Moreover, Webber cites no cases to support his underlying assertion that investigation of fraud and false representations of third parties (e.g. ARFC or the so-called "partner entities"), not his employer, would constitute protected conduct for purposes of a whistleblower retaliation suit against his employer, a wholly separate and different entity from the "partners."[3]  As before, the Complaint paragraphs Webber highlights do not assert that AED was put on notice that Webber was investigating it.  *See* Opp. at p. 14.  Instead, Webber's reporting to AED and/or USAID concerned charges against others.  For instance, Complaint paragraphs 22, 24, and 26 relay accusations against improper or allegedly unlawful loan practices by ARFC.  Complaint paragraphs 23 and 27 concern AED's response to Webber's criticisms of ACDI/VOCA's actions.  Paragraph 31 does not concern reporting against

---

[3] As discussed above in part B(ii), *Yesudian* does not stand for this proposition because the defendant in the § 3730(h) claim in *Yesudian* was the person being investigated and charged with allegations of falsifying documents and perpetrating fraud on the grantee, the University.

any entity, but rather reflects ACDI/VOCA's disinclination to work with Webber. Finally, while paragraph 32 claims that Webber's contact with the outside auditor was discontinued "to avoid having him disclose what he had learned while Chief of Party about the poor supervision in the spending of U.S. taxpayer monies," the information in Webber's own words amounted to "poor supervision" by the partner entities, not any fraudulent conduct by AED. See Complaint ¶ 15, 32.

> ii. <u>**Webber Fails To Allege That He Acted Outside The Scope Of His Job Duties In Any Manner That Should Have Put AED On Notice That He Was Acting In Furtherance Of An FCA Suit**</u>

"Plaintiffs alleging that performance of their normal job responsibilities constitutes protected activity must overcome the presumption that they are merely acting in accordance with their employment obligations to put their employers on notice" that they are engaged in protected activity. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004) (citations omitted). To prevail here, Webber must establish that his reporting of alleged FCA violations of others – or even his concerns about AED's "poor supervision" of others – was beyond the scope of his employment responsibilities and was sufficient to put AED on notice that Webber was engaged in activity protected by statute. *United States ex rel. Schweizer v. Oce N. Am., Inc.*, 2011 U.S. Dist. LEXIS 31204, 9-11 (D.D.C. Mar. 25, 2011). He has made no such allegations.

Indeed, Webber's allegations are quite to the contrary; he repeatedly admits that it was his responsibility and supervisory duty to assure that USAID funds were properly spent, to monitor the partner entities and organizations that had received USAID funds, and even to inform USAID and AED about the alleged unlawful use of loan funds by those entities. Complaint, introductory paragraph, and ¶¶ 2, 14, and 21. Webber conveniently neglects to address these admissions in his Opposition. Instead, he disingenuously contends that the court can reasonably infer "that AED considered Webber's investigative and reporting activities to be outside the scope of his employment." Opp. at p.16. This argument completely contradicts the actual facts he alleges, wherein he explicitly states that his monitoring and reporting activities

DCACTIVE-15927891.2

were specifically part of the normal course of his duties. *See, e.g.,* Complaint at introductory paragraph, ("When Webber *continued to insist on doing his job*, AED fired him…") (emphasis added).

Webber's situation mirrors that of the plaintiff in *Schweizer*. In that case, the court dismissed on summary judgment Schweizer's § 3730(h) retaliation claim because she could not show that her investigatory activities were outside the scope of her normal job duties in any manner that should have put her employer on notice that she was acting in furtherance of an FCA suit. *Schweizer*, 2011 U.S. Dist. LEXIS 31204 at *14. Schweizer was a Contracts Manager responsible for ensuring legal and contractual compliance. *Id.* at *12-13. In this capacity, the steps she took in furtherance of her "fraud investigation" fell within her job description. *Id.* at *13. For example, when Schweizer initially began to investigate potential fraud at the company by comparing Account Managers' pricing with GSA pricing, she was fulfilling her role in ensuring the company's compliance with various schedules under GSA contracts. *Id.* In addition, Schweizer's job description required that she report any suspected pricing issues to her direct supervisor, which she did. *Id.* Furthermore, as Schweizer continued to report her concerns up the company's chain of command, to human resources, in-house counsel, and outside counsel, she acted solely within the context of her employment. *Id.* Indeed, even when Schweizer shared her concerns about her employer's alleged FCA violations to a professional contact at an outside organization, she was still found to have been acting according to her job description. *Id.* at *14. The Court also emphasized that Schweizer's own pleadings characterized her purported investigation as an attempt to "bring [her employer's] GSA contracts into compliance." *Id.* Consequently, the court found that Schweizer had failed to establish that she acted outside her job description, and therefore dismissed her retaliation suit because she failed to put her employer on notice that she was acting in furtherance of an FCA suit. *Id.* Similarly, Webber's complaint must fail.

Webber was responsible for assuring that USAID funds were properly distributed, and in this capacity, like the plaintiff in *Schweizer*, the monitoring, reporting, and other alleged

11

"investigatory" steps he took in furtherance of his "fraud investigation" fell within his job description.  Complaint, ¶¶ 2, 14.  As in *Schweizer*, Webber's reporting of his concerns up the management chain (within AED) and to outsiders (at USAID) was also part of his job duties.  Complaint, ¶¶ 21, 25, 50 ("As AED Chief of Party in Afghanistan, Webber determined that conduct by the five partner organizations, especially ACDI/VOCA, constituted fraud, misconduct, and violations of USAID rules and accepted standards of practice.").  Additionally, just like the plaintiff in *Schweizer*, Webber's own pleading characterized his purported investigation as an attempt to comply with his employment duties as Chief of Party.  Complaint, introductory paragraph, and ¶¶ 2, 14, 21, 25, and 50.  Accordingly, Webber's retaliation case should be similarly dismissed for failing to put AED on notice that he was engaging in protected conduct in furtherance of an FCA suit.

*United States ex rel. Williams v. Martin-Baker Aircraft Co*., 389 F.3d 1251 (D.C. Cir. 2004), the D.C. Circuit's leading opinion on the application of the second prong of a § 3730 claim for retaliation, supports dismissal of Webber's retaliation claim for failure to allege that his "investigatory" activities constituted protected conduct outside the scope of his employment duties.  In *Martin-Baker*, the plaintiff was the chief contracts negotiator of Martin-Baker Aircrafts.  *Id*. at 1254.  In this position, one of the plaintiff's central job responsibilities  was to analyze pricing for products sold to the U.S. government.  *Id*. at 1255.  In fulfilling this role, the plaintiff alerted his supervisor and the government that Martin-Baker's pricing violated its government contracts (and therefore he claimed the FCA).  *Id*. at 1261.  After being terminated by Martin-Baker, the plaintiff brought suit alleging that his firing was in violation of the FCA's retaliation provision.  *Id*. at 1255.  On appeal, the D.C. Circuit concluded that when an employee's employment obligations include reporting potential fraud up the management chain, that report – without more – does not satisfy the notice requirement.  *Id*. at 1261.

On the facts of Martin-Baker, however, the court reversed the Rule 12(b)(6) dismissal of the whistleblower claim based in part on its conclusion that the plaintiff did satisfy the notice requirement when he went beyond his employment obligations by reporting his findings to the

DCACTIVE-15927891.2

government and advising the government to challenge Martin-Baker's pricing. *Id*. Webber improperly attempts to analogize his suit to that of the plaintiff in *Martin-Baker*, contending that he also satisfied the notice requirement by alerting a party outside the usual chain of command (USAID). Opp. at p. 15. Webber's discussion of the facts of *Martin-Baker*, however, is incomplete. Webber mischaracterizes the case by omitting to mention that the *Martin-Baker* court indicated that if plaintiff had alleged in his complaint that his reports to the government were within his scope of his job duties, such reporting would not suffice to put his employer on notice that he was engaged in protected conduct:

> At oral argument, Martin-Baker insisted that Williams's statement to [the Government] was in fact part of his job responsibilities. Martin-Baker might well be able to establish this proposition either at summary judgment or at trial, but at this stage of the proceedings – a Rule 12(b)(6) motion to dismiss – our job responsibilities require that we limit our consideration to the allegations in the complaint and resolve 'all factual doubts ... and all inferences ... in favor of the plaintiff.' (Citations omitted.)  Given this, we cannot intuit, as Martin-Baker would have us, that Williams's responsibilities as a contract negotiator for Martin-Baker included telling the government – the opposing negotiating party – to continue challenging the pricing data underlying his employer's contract. *Id*. at 1261-1262.

Thus, because Webber's reports to USAID, by his own admission, were part of his job duties, this is not a basis to assert that he satisfied the requirement to put AED on notice that he was engaged in protected activity. *Id.; accord, Schweizer*, 2011 U.S. Dist. LEXIS 31204 at *13-14.

In sum, Webber's admissions that his alleged "investigatory actions" fell within the scope of his normal job duties, along with his failure to allege that he acted outside the scope of his job duties in any manner that should have put AED on notice that he was acting in furtherance of an FCA suit, each precludes his ability to meet the required second element of a § 3730 retaliation claim. Based on this reason alone, and because Webber cannot credibly amend his Complaint to reverse his admission that his monitoring and reporting activities were central to his duties as Chief of Party, Webber's claim should be dismissed with prejudice.

**D.** **Webber Fails to Allege That AED Retaliated Against Him For Engaging In Protected Whistleblower Activity**

13

As set forth in AED's motion, Webber has failed to state this allegation clearly, and he has failed to allege facts supporting that AED retaliated against him, or that any decision AED made about Webber's employment was motivated by his engaging in protected activity.  Mot. at pgs. 10-11; *Schweizer*, 2011 U.S. Dist. LEXIS 31204 at 11 (*citing Hoyte*, 518 F.3d  at 66). Because Webber has failed to allege that he engaged in protected activity, and because his allegations undercut his ability to assert that AED knew he was engaged in protected activity, AED could not possess the retaliatory intent necessary to establish a violation of § 3730(h).

III.     **CONCLUSION**

For the foregoing reasons, Defendant AED respectfully requests that the Court grant its motion to dismiss with prejudice Plaintiff Webber's complaint for whistleblower retaliation for failure to state a claim under Rule 12(b)(6).

Dated:  August 22, 2011                                   Respectfully submitted,

                                                          **CROWELL & MORING LLP**


                                                          */s/  Mana E. Lombardo*

                                                          Mana E. Lombardo
                                                          (CA Bar 228846, admitted *pro hac vice*)
                                                          Email:  melombardo@crowell.com
                                                          Mark R. Troy
                                                          Email:  mtroy@crowell.com
                                                          515 South Flower Street, 40th Floor
                                                          Los Angeles, CA  90071
                                                          (213) 622-4750

                                                          Glenn D. Grant (D.C. Bar 437324)
                                                          Email:  ggrant@crowell.com
                                                          1001 Pennsylvania Avenue, N.W.
                                                          Washington, DC  20004-2595
                                                          (202) 624-2852


                                                          Counsel for Defendant
                                                          Academy for Educational Development

14

## CERTIFICATION OF SERVICE

I hereby certify that I am an attorney for Defendant Academy for Educational Development, and that on August 22, 2011, I caused a copy of the foregoing Defendant Academy for Educational Development's Reply Memorandum in Support of Motion to Dismiss to be filed with this Court and served on Plaintiff's counsel below electronically via the Court's ECF system:

> Michael A. Schlanger
> COVINGTON & BURLING LLP
> 1201 Pennsylvania Avenue, NW
> Washington, DC  20004
>
> Robert P. Haney, Jr.
> COVINGTON & BURLING LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, NY  10018-1405
>
> Geoffrey J. Vitt
> Elizabeth K. Rattigan
> VITT & RATTIGAN, PLC
> 8 Beaver Meadow Road
> P.O. Box 1229
> Norwich, VT  05055

/s/  *Mana E. Lombardo*